

FILED
FEB 17 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| TOYS "R" US-DELAWARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:11-cv-305 |
| | ) | |
| TOTS IN MIND, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the Court are Toys "R" Us-Delaware, Inc.'s ("TRU") Motion for Sanctions (Dkt.

No. 47), TRU's Motion to Strike the Affidavit of Mark A. LaMantia (Dkt. No. 50), TRU's

Motion for Partial Summary Judgment (Dkt. No 40), and Tots in Mind, Inc.'s ("Tots") Motion

for Summary Judgment (Dkt. No. 55).

**BACKGROUND**

This cause of action is based on an alleged breach of contract. The parties dispute

whether their buyer-seller arrangement is governed by the Master Purchase Order ("MPO")

agreement. TRU, the buyer, alleges that it sent a copy of the MPO to all of its valued suppliers

and that the MPO governed each of the subsequent purchase orders between TRU and these

valued suppliers. TRU also claims that the Shipment Set Details ("Details" or "Shipment

Details")—the instructions governing each of TRU's electronic purchase orders with its

suppliers—also referenced the MPO as the governing document between the parties.

Consequently, TRU contends that the MPO is a binding agreement between the parties. Tots, the

seller, alleges that it never received the MPO, and that it did not interpret any language in the

Shipment Details to reference an external agreement governing the parties' relationship.

1

TRU claims, *inter alia*, that Tots breached the MPO's defend and indemnification provisions. The present controversy succeeds an underlying products liability lawsuit brought by the Blanco family, which culminated in a settlement agreement. In sum, the Blanco family sued Tots and TRU alleging that defects in one of Tots' products, the Cozy Crib Tent II, injured their child.

The MPO contains a provision stating:

> Seller shall defend, indemnify and hold harmless Buyer, . . . and shall hold them harmless against any and all alleged, actual or threatened liabilities, damages, claims, suits, actions, loss, costs and expenses, including reasonable attorneys' fees, arising out of or alleged to have arisen from a breach of the representations, warranties or obligations of Seller under this Purchase Order, . . . or in connection with the possession, handling, use, resale, labeling or return of the Merchandise . . . including but not limited to, . . . products liability actions, . . . .

TRU tendered its defense to Tots and Tots' insurance company on September 9, 2008. TRU alleges that Tots breached the terms of the MPO by refusing to defend TRU in the *Blanco* litigation and by failing to carry the amount of insurance mandated by the MPO. The Blanco's claims were settled in early October 2009, and TRU and/or TRU's insurer paid a significant portion of that settlement.

## ANALYSIS

### I.      Motion for Sanctions

TRU's Motion for Sanctions is based on Tots' alleged spoliation of evidence. During his deposition, Mr. LaMantia, Tots' Fed. R. Civ. P. 30(b)(6) witness, testified that Tots never altered its seven-year document destruction policy during either this, or the underlying *Blanco*, litigation. Following LaMantia's deposition, Tots filed affidavits correcting LaMantia's alleged misstatement. The affidavits indicate that a policy suspending document destruction has been in place as to relevant documents since the time of the *Blanco* litigation. Seemingly as an excuse

2

for the inconsistencies, Mr. LaMantia's affidavit also states that he previously suffered a stroke, which has affected his memory.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). The trial court's discretion for choosing the appropriate sanction for spoliation is broad. *Id.* In addition to sanctioning improper conduct, the district court may also impose sanctions for the purpose of leveling the evidentiary playing field. *Id.*

The Court is not persuaded that subsequent affidavits alone should be permitted to wholly contradict Mr. LaMantia's prior deposition testimony. *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) ("We have been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit."). Defendants failed to file a notice of errata subsequent to the damning deposition; Defendants failed to provide any internal documentation evidencing a suspension of its document destruction policy; and Defendants failed to provide any medical documentation evidencing (a) Mr. LaMantia's stroke or (b) that the alleged stroke impacted Mr. LaMantia's memory.

After careful consideration, the Court finds that sanctions for spoliation are appropriate. The Court will instruct the jury that no retention policy was put in place at Tots during the relevant time period. The Court will also instruct the jury that they may infer that but for Tots' spoliation, TRU would have been able to prove (1) that Tots did in fact receive the MPO; (2) that Tots retained printed copies of Shipment Set Details predating 2004 on file; and (3) that the paper purchase orders exchanged between Tots and TRU, prior to the electronic purchase orders, contained indemnification and warranty provisions printed on the reverse side of the orders.

However, the Court will further instruct the jury that they are not *required* to so find, and in making their decision, they should consider all of the relevant evidence presented. In sum, the jury will be instructed that it *may* find that Tots' seven-year document destruction policy is the reason Tots was unable to produce the relevant documents.

## II.   Motion to Strike the Affidavit of Mark A. LaMantia

TRU moves to strike LaMantia's affidavit on the basis of inconsistencies between Mr. LaMantia's deposition testimony as compared to the later-filed affidavit. Although the Court is not convinced that Mr. LaMantia was being intentionally evasive during his deposition, there is certainly evidence that he was not suitably prepared or able to answer relevant questions to the degree typically required of a 30(b)(6) designee. Nonetheless, because numerous statements in Mr. LaMantia's affidavit (Dkt. No. 46-14) relate to the documents that might have been subject to spoliation, the Court strikes Mr. LaMantia's affidavit as an additional sanction in an effort to balance the evidentiary playing field.

## III.   Motions for Summary Judgment

### a.   Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### b. TRU's Motion for Partial Summary Judgment

TRU asks this Court to find, as a matter of law, that the MPO governs the relationship between the parties. TRU has proffered evidence that it sent the MPO to all of its valued suppliers, including Tots. Tots claims that it never received the MPO. This is clearly a dispute of material fact that should be reserved for the jury.

Tots argues that even if the Court were to find that Tots received the MPO, this would not conclusively render Tots bound by the MPO's terms. In Tots' Motion for Summary Judgment, Tots highlights language in the MPO stating "THIS PURCHASE ORDER . . . constitutes a binding agreement between Toys 'R' Us, Inc., . . . ('Buyer') and the party to whom this Purchase Order is addressed on the front side in the section referenced 'To'. ('Seller')." Because TRU has produced no evidence indicating that Tots falls within this technical definition of "Seller," Tots claims it is not bound by the MPO.

It is beyond dispute that contract formation requires offer and acceptance. When "parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Wechert Co. Realtors v. Thomas W. Ryan*, 608 A.2d 280, 284 (N.J. 1992). Contract formation requires a "manifestation of mutual assent;" in making this determination, a court should consider the parties' "outward expressions" and ask "what meaning would be 'conveyed to a *reasonable person* cognizant of the relationship between the parties and all of the antecedent and surrounding facts and circumstances.'" *Pagnani-Braga-Kimmel Urologic Assoc., P.A. v. Chappell*, 968 A.2d 1242, 1245 (N.J. Super. Ct. Law Div. 2008)

(quoting *Esslinger's, Inc. v. Alachnowicz*, 172 A.2d 433, 437 (N.J. Super. Ct. App. Div. 1961) (emphasis in original).[1]

Should the jury find that Tots received a copy of the MPO, the jury may also find that both the prior relationship between the parties and the surrounding facts and circumstances indicate that mutual assent exists in this instance. The jury may find that Tots accepted the MPO by its conduct, as permitted by the MPO. *See Graziano, M.D. v. Grant, M.D.*, 741 A.2d 156, 162 (N.J. Super. Ct. App. Div. 1999) (acceptance may come via conduct).

In addition, TRU provided evidence that Shipment Details accompanied every transaction between the parties. Most, but not all, of these Details contained the following language: "This EDI purchase order document shall be governed by the requirements, terms and conditions set forth in the Toys 'R' Us, Inc. Master Purchase Order Agreement, which may be found on the vendor extranet at http://vendorconnect.toysrus.com." The jury could find, based on circumstantial evidence, that it is more likely than not that this language appeared in the Shipment Details accompanying the purchase order for the allegedly defective Blanco crib tent. As a result, the jury could find that the cited language also renders Tots subject to the terms of the MPO.

Because issues of fact remain as to whether the MPO is the controlling agreement in the case at bar, summary judgment is denied.

### c. Tots' Motion for Summary Judgment

Tots' Motion for Summary Judgment is also denied. Tots first claims that because it does not fall within the technical definition of "Seller" in the MPO, the MPO does not govern the

---

[1] Although it is true that the law should not "make a better contract for parties than they themselves have seen fit to enter into," *James v. Fed. Ins. Co.*, 73 A.2d 720, 722 (N.J. 1950), here the Court is asked to determine whether the parties have entered into an agreement, not what the terms of that agreement should be.

agreement between the parties. For reasons discussed *supra* in Part III.b, issues of fact remain as to whether the MPO is the governing agreement.

Next, Tots claims that it is not required to indemnify TRU when TRU was also independently negligent. However, the Court finds that the MPO clearly anticipated the current circumstance as one in which indemnification would be required. First, no finding has been made as to TRU's negligence. The underlying litigation concluded in settlement. Thus, issues of fact remain as to the cause of the alleged underlying harm. *See Cent. Motor Parts Corp. v. E.I. DuPont deNemours & Co.*, 596 A.2d 759, 762-63 (N.J. Super. Ct. App. Div. 1991) ("Without trial . . . or settlement proceedings fixing liability, the court hearing the indemnification claim will have to conduct proceedings in which the indemnitee will have the opportunity to prove (1) that it was the indemnitor's wrongful conduct that occasioned the claim against the indemnitee, (2) that the indemnitee was not independently liable to the injured person, and (3) that the indemnitee incurred legal costs defending its vicarious liabilities, and in what amount.").[2]

However, even assuming that TRU was independently negligent for failing to disclose or remedy known defects in the Cozy Crib Tent II, the MPO requires Tots to indemnify TRU. The Court finds that the independent negligence and related liability alleged against TRU in the *Blanco* litigation arose out of Tots' breaches of "representations, warranties or obligations," and

---

[2] The Court understands that this portion of the *Central Motor Parts II* opinion, 596 A.2d 759 (affirming in part *Central Motor Parts I*), analyzes the appropriateness of indemnification for attorneys' fees, rather than indemnification for the defendants' vicarious liability. Plaintiff's entitlement to indemnification for defendants' vicarious liability was an issue taken up in *Central Motor Parts I*, 596 A.2d 773 (N.J. Super. Ct. Law Div. 1989). The facts in *Central Motor Parts I* are distinguishable from the case at bar. In that case, the court found that the plaintiff's settlement payment was in compensation for plaintiff's independent fault, not for any vicarious liability plaintiff might have suffered based on the defendants' negligence. The court in *Central Motors I* was able to make this determination based on the extensive record, which included the settlement transcript. The transcript indicated that the defendants had already paid a settlement sum intended to account for their own liability. Accordingly, any remaining settlement that the plaintiff paid was based on his own liability and not any vicarious liability. Such a clear record is not before the court in this case. Thus, a determination of the indemnitee's alleged independent liability, as opposed to any vicarious liability, could be necessary here—as was a determination of the attorneys' fees issue in *Central Motor Parts II*.

were "in connection with" the "resale . . . of the merchandise . . . [or a] products liability action[]." *See Leitao v. Damon G. Douglas Co.*, 693 A.2d 1209, 1212 (N.J. Super. Ct. App. Div. 1997) (explaining the common meaning of "arising out of"). The MPO requires indemnification for "any and all" liabilities and damages in these circumstances. Although a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms," *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1159 (N.J. 1986), it is difficult to imagine language broader than the phrase "any and all." Simply put, the clear language of the MPO permits both the possibility that TRU could be found negligent and that TRU could recover indemnification from Tots—so long as TRU's negligence arises from or is in connection with the circumstances outlined in the MPO.[3]

Based on this finding, it will not be necessary to hold a trial within a trial to allocate liability for the underlying *Blanco* settlement unless the jury finds that the MPO does not govern the agreement between the parties. However, should the jury finds that the MPO is the governing document, Tots is liable for the amount TRU paid in the *Blanco* settlement, so long as TRU can show that "(a) the indemnitee's claims are based on a valid, pre-existing indemnitor/indemnitee relationship; (b) the indemnitee faced potential liability for the claims underlying the settlement; and (c) the settlement amount was reasonable." *Chem. Bank of N.J. Nat. Ass'n v. Bailey*, 687 A.2d 316, 321 (N.J. Super. Ct. App. Div. 1997).

Next, Tots claims that an action for its alleged failure to procure the required amount of insurance under the MPO is time barred. A breach of contract action involving the sale of goods

---

[3] This is not to say that TRU could recover from Tots in all instances in which TRU might be found independently negligent. The MPO only requires Tots to account for TRU's independent negligence when TRU's negligence arises from or is in connection with the circumstances explicitly enumerated in the MPO.

carries a 4-year statute of limitations in New Jersey. *See* N.J. Stat. Ann. § 12A:2-725. Even when a contract is a mixed goods-services agreement, New Jersey applies the predominant factor test for determining the relevant law and the relevant statute of limitations period. *See Docteroff v. Barra Corp. of Am., Inc.*, 659 A.2d 948, 953 (N.J. Super. App. Div. 1995). It is indisputable that the contract at bar is one predominantly dealing in goods. Other provisions within the agreement are ancillary to the sale of the crib tents, and no jury could reasonably find otherwise. The relevant statute of limitations period is four years.

In New Jersey, "a cause of action accrues and the statute of limitations begins to run when a right to institute and maintain a suit first arises." *Am. Cyanamid Co. v. Miss. Chem. Corp.*, 817 F.2d 91, 93 (11th Cir. 1987). This is the date that the breach occurs. *See Gogoliu v. Williams*, 102 A. 667, 668 (N.J. 1917) ("[T]he running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date."); *accord Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So.2d 576 (Fla. Dist. Ct. App. 2006); *T & N PLC v. Fred S. James & Co. of N.Y., Inc.*, 29 F.3d 57 (2d Cir. 1994). The MPO requires Tots to maintain insurance "for a period of at least two (2) years from the date of the Order." As a result, Tots breached the contract on the Order date, or the first date thereafter that Tots was not in compliance with the insurance requirement. TRU sent the relevant Order—that is, the Order responsible for the Blanco crib tent—at some point between March and June of 2005. TRU sent a letter to Tots on May 6, 2005 regarding the inadequacy of Tots' insurance coverage. At the latest, the breach occurred on May 6, 2005.[4] Because this cause of action was filed after May 6, 2009, TRU's breach of contract claim for failure to procure insurance is time barred.

---

[4] Though, in order for TRU to send the deficiency letter, the breach must have actually occurred at some point before this date.

9

TRU has also raised equitable defenses and seeks to toll the statute of limitations. The Court reserves judgment on these issues, and the arguments are taken under advisement.

The Court also rejects Tots' argument that collateral payments from TRU's independent insurance provider in the underlying *Blanco* settlement leaves TRU without a claim for damages in this case. The agreement between TRU and Tots specifically states: "Seller shall defend, indemnify and hold harmless Buyer [TRU], . . . and shall hold them harmless against *any and all* alleged, actual or threatened liabilities, damages, claims, suits, actions, loss, costs and expenses." (emphasis added). The plain language of the MPO does not limit TRU's recovery based on payments received from its independent insurance provider. Instead, the MPO requires Tots to indemnify TRU for "*any and all* . . . damages, claims, suits, actions, loss, costs and expenses." The language of the MPO is clear. TRU, not TRU's insurance provider, entered into a settlement agreement with the Blancos, and TRU, not TRU's insurance provider, suffered damages. The Court finds that these damages arose from or were in connection with circumstances identified in the MPO, and that TRU's ability to recover these damages from Tots is not contingent on TRU's prudence in obtaining additional insurance coverage. Nor is TRU's ability to recover dependent on any decision by TRU's independent insurer to enforce terms of a subrogation agreement. TRU has indicated that it paid a substantial amount to settle the underlying dispute. This is a sufficient allegation of damages, and summary judgment is denied.

Next, Tots claims that TRU's attorneys' fees calculation is too speculative to permit TRU's recovery.[5] Tots bases this allegation on statements from TRU's expert that he was unable to opine that the amount of time TRU's attorneys spent on certain projects was reasonable. New

---

[5] Tots also claims that TRU is not entitled to attorneys' fees because the attorneys' fees claim arises out of the MPO's indemnification provision. Tots argues that TRU's personal negligence prevents TRU's recovery. The Court did not find this argument compelling as to the indemnity provision as a whole, *see* discussion *supra*, and the argument is similarly unmoving as to the discrete attorneys' fees issue.

Jersey law provides that a "trial judge may rely upon his own knowledge of a case in evaluating the reasonableness of a counsel fees application." *S.N. Golden Estates, Inc. v. Cont'l Cas. Co.*, 680 A.2d 1114, 1121 (N.J. Super. App. Div. 1996). Similarly, Virginia does not require expert testimony in order to establish the reasonableness of attorneys' fees. *See Minn. Lawyers Mut. Ins. Co. v. Batzli*, 442 F. App'x. 40, 54, 2011 WL 3347849, *11 n.21 (4th Cir. Aug. 04, 2011); *Comstock Potomac Yard, L.C. v. Balfour Beatty Constr., LLC*, 694 F. Supp. 2d 468, 494 (E.D. Va. 2010). In no way do the concerns expressed by TRU's expert as to certain fees leave TRU without evidence to prove the reasonableness of its attorneys' fees at trial. The Court finds that a factual dispute remains, and summary judgment is denied.

Finally, Tots claims that TRU's counts for negligence, breach of warranty, and equitable indemnification fail because TRU cannot show that Tots proximately caused the harm in the underlying litigation. Viewing the facts in the light most favorable to TRU, *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), and considering the fact finder's ability to deem the testimony from TRU's expert as persuasive circumstantial evidence, the Court finds that a reasonable jury could rule in the TRU's favor on the proximate cause issue. For this reason, summary judgment is denied.

Tots' remaining arguments only become relevant if the MPO does not govern the agreement between the parties. Tots asserts that the economic loss doctrine bars TRU's count against Tots for negligence. Tots also claims that TRU's equitable indemnification count fails because (a) TRU cannot show that Tots was negligent in the underlying action and because (b) TRU's own negligence precludes recovery. The Court reserves judgment on these issues until it becomes clear that such a ruling is necessary to the outcome in this case.

## CONCLUSION

Accordingly, this cause of action will proceed to a bifurcated jury trial. First, the jury will determine whether the MPO governs the buyer-seller relationship between the parties. If the jury answers this question affirmatively, the MPO mandates that the remaining arguments are reserved for a bench trial. If the jury answers this question negatively, the Court will rule on the reserved summary judgment issues, and the jury will decide any outstanding matters.

In sum, pursuant to the preceding ORDER, Plaintiff's Motion for Sanctions and Motion to Strike the Affidavit are GRANTED, and both Motions for Summary Judgment are DENIED. The Court reserves judgment on any equitable defenses TRU may have to its breach of contract claim for failure to procure insurance.

February 17, 2012
Alexandria, Virginia

/s/

Liam O'Grady
United States District Judge

12